UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Hawkes Co., Inc., Pierce Investment Company, and LPF Properties, LLC, | Court File No. __(___/___) |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| UNITED STATES ARMY CORPS OF ENGINEERS, | |
| Defendant. | |

Plaintiffs Hawkes Co., Inc., Pierce Investment Company, and LPF Properties, LLC, for their Complaint seeking declaratory and injunctive relief allege as follows:

## INTRODUCTION

1. In this action, the Plaintiffs seek review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §551, *et seq.*, of a final agency action of the United States Army Corps of Engineers (the "Corps"), finding that certain property in which the Plaintiffs have an ownership or other beneficial interest (the "Property") is a water of the United States under the Federal Water Pollution Control Act, 33 U.S.C. §1251, *et seq.*, known as the Clean Water Act ("CWA"), and therefore subject to the Corps' jurisdiction.

2. As a result of the Corps' unlawful assertion of jurisdiction, Plaintiffs are unable to use the Property without fear of a CWA enforcement action, fines, and penalties. The Corps' improper assertion of jurisdiction also subjects Plaintiffs to an unlawful and burdensome permitting requirement.

1

3. Plaintiffs seek by this action a declaration that the Property is not a water of the United States under the CWA. Plaintiffs also seek an injunction enjoining the Corps from exercising jurisdiction over Plaintiffs' Property.

4. The Court's review of the agency action that is the subject of this proceeding is based upon the administrative record before the Corps at the time the Corps made its decision.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §2201 (authorizing declaratory relief); 28 U.S.C. §2202 (authorizing further "necessary or proper relief"); and 5 U.S.C. §702 (providing for judicial review of agency action under the APA).

6. The Property consists of approximately 530 acres of real estate located in New Maine Township, Marshall County, Minnesota. Venue in this judicial district is proper under 28 U.S.C. §1931(e)(2) because the Property that is the subject of the action is located within this district.

## PARTIES

7. Plaintiffs Pierce Investment Company ("Pierce Investment"), a Minnesota corporation with its principal place of business in Minnesota, and LPF Properties, LLC ("LPF Properties"), a North Dakota limited liability company with its principal place of business in North Dakota, each own portions of the Property.

8. Plaintiff Hawkes Co., Inc, ("Hawkes") is a North Dakota corporation with its principal place of business in North Dakota. Hawkes will pay royalties to the owners

of the Property in consideration of its use of the Property to expand Hawkes' existing nearby peat mining operations to the Property.

9. All three plaintiffs are owned by the same four or five members of the Pierce family, and Kevin Pierce is an officer of all three plaintiffs and has been acting on their behalf in these proceedings.

10. Defendant United States Army Corps of Engineers is a branch of the Department of the Army and an agency of the United States.

## LEGAL BACKGROUND

11. In 1972, Congress enacted the CWA to regulate "navigable waters."

12. Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the unpermitted discharge of dredged and fill material into "navigable waters."

13. Section 502(7) of the CWA, *id.* §1362(7), defines "navigable waters" to mean the "waters of the United States, including the territorial seas."

14. Section 404 of the CWA, 33 U.S.C. §1344, authorizes the Secretary of the Army, through the Corps, to issue permits for the discharge of dredged and fill material into "navigable waters."

15. By regulation, the Corps may determine whether a particular parcel of property contains "waters of the United States" by issuing an Approved Jurisdictional Determination ("JD"). 33 C.F.R. §§320.1(a)(6), 331.2.

16. The Corps has promulgated regulations defining "waters of the United States." *Id.* §328.

17. Under those regulations, navigable waters, interstate waters, intrastate waters with uses that could affect interstate or foreign commerce, impoundments of waters, tributaries of waters, territorial seas, and wetlands adjacent to other waters that are not themselves wetlands, are considered "waters of the United States." *See id.* §328.3.

18. In 2001, the United States Supreme Court, in *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers ("SWANCC")*, 531 U.S. 159 (2001), held that isolated, intrastate, non-navigable bodies of water are not "waters of the United States."

19. In response to the *SWANCC* opinion, the Corps, along with the United States Environmental Protection Agency ("EPA"), issued an Advance Notice of Proposed Rulemaking on the Clean Water Act Regulatory Definition of "Waters of the United States," seeking comment on whether and how the agencies should amend the definition of the term in order to account for the Supreme Court's decision. 68 Fed. Reg. 1991 (Jan. 15, 2003).

20. The Corps did not follow through with the rulemaking.

21. Notwithstanding *SWANCC,* the Corps and EPA continued to interpret their authority under the CWA to extend to waterbodies and wetlands so long as these features had at least a "hydrological connection" to navigable-in-fact waterbodies. *See, e.g., United States v. Rapanos,* 376 F.3d 629, 638 (6th Cir. 2004), *vacated, remanded by Rapanos v. United States,* 547 U.S. 715 (2006).

4

22. In *Rapanos v. United States,* the Supreme Court rejected the agencies' hydrological connection theory of CWA jurisdiction. *See* 547 U.S. at 739 (plurality opinion); *id*. at 780-82 (Kennedy, J., concurring in the judgment).

23. In that decision, Justice Scalia authored a plurality opinion, joined by three other Justices, which concluded that the Corps' jurisdiction over non-navigable waters only extends to "relatively permanent, standing or continuously flowing bodies of water" that are "connected to traditional interstate navigable waters." *Id.* at 739, 742 (plurality opinion). In addition, wetlands adjacent to such jurisdictional waters will qualify as jurisdictional when "the wetland has a continuous surface connection with that water, making it difficult to determine where the 'water' ends and the 'wetland' begins." *Id.* at 742.

24. Justice Kennedy concurred in the judgment but adopted a broader interpretation of the Corps' jurisdiction over non-navigable waters, finding them jurisdictional if they "possess a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Rapanos,* 547 U.S. at 759 (Kennedy, J., concurring in the judgment). According to Justice Kennedy, a significant nexus exists where non-navigable waters, either alone or in combination with similarly situated waterbodies, "significantly affect the chemical, physical, and biological integrity" of navigable-in-fact waters (also known as "traditional navigable waters"). *Id.* at 780. The Eighth Circuit Court of Appeals recognizes both the plurality opinion and Justice Kennedy's significant nexus test as supporting CWA jurisdiction over wetlands. *United States v. Bailey,* 571 F.3d 791 (8th Cir. 2009).

25. After *Rapanos,* the Corps, in conjunction with EPA, issued a non-binding guidance document opining on the scope of the agencies' CWA jurisdiction. *See* Clean Water Act Jurisdiction Following the U.S. Supreme Court's Decision in *Rapanos v. United States & Carabell v. United States* (Dec. 2, 2008). In that guidance document, the Corps and EPA assert their intention to exercise jurisdiction over "waters of the United States" that satisfy either the Scalia "relatively permanent" test or the Kennedy "significant nexus" test.

26. In April, 2011, the Corps and EPA issued a new draft guidance document, but it has not yet been finalized. *See* Draft Guidance on Identifying Waters Protected by the Clean Water Act (2011). In that guidance document, the Corps and EPA state their intention to continue to assert jurisdiction over "waters of the United States" that satisfy either the Scalia or the Kennedy test. The document also notes the agencies' intention to engage in APA rulemaking after finalizing the new guidance.

## FACTUAL ALLEGATIONS

### The Property

27. The Property contains peat and, as such, is necessarily wetland. All peat mining occurs in wetlands because peat is only found in wetland environments. Thus peat mining is known as a "wetland dependent" activity and, in Minnesota, peat mining and wetland replacement and restoration associated with peat mining are regulated under permits issued by the Minnesota Department of Natural Resources.

28. The Plaintiffs' Property is located over 120 river miles from the nearest traditional navigable water ("TNW"), the Red River of the North.

29. There is no significant connection between Plaintiffs' Property and the Red River of the North located 120 river miles away. There is no significant chemical, physical or biological impact on, or connection between, the wetlands on Plaintiffs' Property and the Red River of the North.

30. There is no continuous surface connection between wetlands on Plaintiffs' Property and a water of the United States, such that it is difficult to determine where the water ends and the wetland begins. A farm, a separate, shallow ditch dug for farming purposes in an area the Corps concedes is upland at the border of the farm most distant from Plaintiffs' Property, and a sizable upland area are all located between Plaintiffs' Property and the area that the Corps claims is a "relatively permanent water." In other words, the wetlands on Plaintiffs' Property are easily distinguishable from any jurisdictional water.

31. The wetlands on Plaintiffs' Property are not "waters of the United States" and in the two years that the Corps has had to establish that there is a significant nexus between the Red River of the North and Plaintiffs' Property, there is no information in the administrative record to support any such significant nexus.

**Administrative Proceedings Before the Corps and Plaintiffs' Exhaustion of their Administrative Remedies**

32. On or about December 13, 2010, Hawkes applied for a permit from the Corps under Section 404 of the CWA to expand its existing peat mining operations to a portion of the Property.

7

33. On or about March 15, 2011, the Corps issued a letter to Hawkes indicating the Corps had made a "preliminary determination that this wetland is a water of the United States and is regulated by the Corps under Section 404 of the Clean Water Act." *See* **Exhibit A**. The Corps' letter went on to assert that "at a minimum" an environmental assessment will be required.

34. On or about August 25, 2011, the Corps sent another letter to Hawkes with a list of nine additional information items that would be needed in connection with the permit application. These included hydrological assessments of the wetland and of groundwater flow spatially and vertically, functional resource assessments including vegetation surveys, inventorying and analyzing the quality of wetlands in the entire watershed, evaluation of *upstream* potential impacts, and more. *See* **Exhibit B.**

35. Faced with these overly burdensome demands by the Corps and disagreeing with the Corps' preliminary determination of jurisdiction, Plaintiffs requested information on the basis for this determination.

36. On November 8, 2011, the Corps provided Plaintiffs with a copy of a "draft" Jurisdictional Determination (the "draft JD") for the Property. The draft JD reflected a conclusion that the Property was connected by a Relatively Permanent Water ("RPW")—a series of culverts and unnamed streams which flowed into the Middle River—to a TNW (the Red River) and the Property was, therefore, subject to the Corps' jurisdiction under the CWA. The draft JD did not determine that there was a signficant nexus between the Property and any navigable waters.

37. On December 1, 2011, Corps representatives conducted a site visit of the Property for the purpose of making a jurisdictional determination.

38. By correspondence dated December 19, 2011, Plaintiffs, through their wetland consultant, identified numerous errors in the draft JD and provided the Corps with additional information to be considered in connection with its jurisdictional determination. This information showed that there was, in fact, no RPW that connected the Property to a TNW.

39. On or about February 7, 2012, Defendant issued an Approved Jurisdictional Determination (the "Initial JD"), concluding that there was a significant nexus between the Property and the Red River and accordingly, the Property was a "water of the United States" subject to the Corps' jurisdiction under the CWA.

40. On or about April 4, 2012, Plaintiffs filed a timely appeal of the JD under 33 C.F.R. §331.6 setting forth the reasons why the Property is not a water of the United States.

41. On or about April 23, 2012, the Regulatory Appeals Review Officer sent Plaintiffs' consultant a letter indicating that the appeal was appropriate for consideration by the administrative appeals program and the Corps then provided the administrative record to the Review Officer.

42. The parties presented their oral arguments before the Review Officer on July 24, 2012, and an Administrative Appeal Decision was issued on October 24, 2012, finding that the appeal had merit and that the administrative record "[did] not contain sufficient documentation/analysis to support a finding of Clean Water Act jurisdiction."

*See* **Exhibit C**. In support of that conclusion, the Administrative Appeal Decision noted, among other things:

- "The [Administrative Record] does not contain data supporting flow regime, volume, duration, or frequency from the wetlands to the river. Additionally, the District states that indicators of the transport of energy, materials, and nutrients were observed during a site visit, but there is no quantitative date [sic] given to support the finding." (footnote omitted)

- "While the [Administrative Record] provides information indicating an OHW [i.e., "ordinary high water"] mark for the unnamed tributary exists, it does not provide sufficient evidence to establish a significant nexus that the number of flow events, volume, duration, and frequency of water flowing through the tributary are such that it has an appreciable effect on the TNW." (footnote omitted)

- "The [Administrative Record] included a description of the stream channel riparian corridor from the unnamed tributary to the TNW. However, the water flow regime information was not sufficient to indicate that a significant nexus exists." (footnote omitted)

43. Following remand, on or about December 31, 2012, the Corps issued a revised JD (the "Revised JD") and advised that the Revised JD is a "final Corps permit decision in accordance with 33 C.F.R. §331.10." According to 33 C.F.R. §331.21, Plaintiffs are considered to have exhausted their administrative remedies when a final decision is made pursuant to 33 C.F.R. §331.10.

10

44.     The Revised JD does not contain any new information to support a significant nexus between the Property and the Red River of the North.  However, the Revised JD still purportedly relies on Justice Kennedy's "significant nexus" test to assert jurisdiction over the Property, which is described by the Revised JD as a "Non-Relatively Permanent [Water] that flow[s] directly or indirectly into [a] Traditional Navigable [Water]."

45.     The Revised JD does not add any new information that would demonstrate how Plaintiffs' land, either quantitatively or qualitatively, significantly affects the physical, biological, and chemical integrity of the Red River of the North located 120 river miles from the property.  Even though the Corps has had two years to establish jurisdiction, its Revised JD, like the Initial JD, speaks only to the overall functions provided by wetlands in general and stream headwaters in general and, as the Review Officer found, it does "not speak to how the specific onsite wetland and tributaries have a significant nexus that is more than speculative or insubstantial on the chemical, physical or biological integrity of the downstream TNW."

**Applicable Tests for Exercise of Jurisdiction Under the CWA**

46.     The controlling tests for defining "waters of the United States" are Justice Scalia's plurality opinion in *Rapanos v. United States* and Justice Kennedy's significant nexus test.

47.     The Revised JD does not meet either applicable test for assertion of jurisdiction under the CWA.

48. First, the Revised JD does not meet Justice Scalia's "relatively permanent" test because there is no substantial evidence that Property contains any "relatively permanent, standing or continuously flowing bod[y] of water" that is connected to a jurisdictional water such that one cannot distinguish tell where the wetlands on Plaintiffs' Property end and the alleged jurisdictional water begins. *Rapanos,* 547 U.S. at 739 (plurality opinion). Upland area clearly separates the two locations.

49. Second, the Revised JD does not meet Justice Kennedy's "significant nexus" test. No substantial evidence supports the Revised JD's conclusion that a significant nexus exists between the Property and the Red River of the North. The Revised JD does not establish a significant nexus because there is no new evidence in the Revised JD to determine the qualitative or quantitative effect on the Red River of the North. Such evidence is necessary to distinguish between a jurisdictional *significant* nexus and a non-jurisdictional *insignificant* nexus as indicated by the Corps' own Review Officer.

50. Since no substantial evidence exists to support the Revised JD's conclusion that a significant nexus exists between the Property and the Red River of the North, the JD impermissibly assumes, contrary to Justice Kennedy's concurring opinion in *Rapanos,* that a non-speculative effect is necessarily a *significant* effect.

51. Plaintiffs' Property is not subject to the CWA because it does not contain any "waters of the United States." Therefore, the Revised JD is arbitrary and capricious, contrary to law, and unsupported by substantial evidence. *See* 5 U.S.C. §706(2).

## FIRST CLAIM FOR RELIEF -- INJUNCTIVE RELIEF

52. Plaintiffs hereby reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

53. Plaintiffs wish to conduct their business activities on the Property that the Corps wrongfully claims to be subject to its CWA permitting authority.

54. Plaintiffs are and will continue to be directly affected and injured by the Corps' expansive and unlawful assertion of CWA jurisdiction over their Property.

55. The Corps' Revised JD imposes significant injury on Plaintiffs by preventing them from using their Property as they wish without risking an enforcement proceeding, fines, and penalties. The Corps' Revised JD also imposes on Plaintiffs the illegal, burdensome, and expensive requirement that they obtain a Section 404 CWA permit in order to conduct their peat mining activities. As a result, Plaintiffs' use of their property has been, is being—and unless the Court grants relief—will continue to be adversely affected. Hence, the Corps' unlawful exercise of jurisdiction causes Plaintiff irreparable injury.

56. Setting aside the Corps' Revised JD will redress Plaintiffs' injuries by allowing Plaintiffs to use their property.

57. Plaintiffs have no plain, speedy, and adequate remedy at law. Absent judicial intervention, Plaintiff will continue to suffer irreparable injury.

58. The Corps' Revised JD is a final agency action subject to judicial review under the APA. *See* 5 U.S.C. §702; 33 C.F.R. §320.1(a)(6).

59. Accordingly, injunctive relief enjoining the Corps from exercising jurisdiction under the CWA is appropriate.

## SECOND CLAIM FOR RELIEF -- DECLARATORY JUDGMENT

60. Plaintiffs hereby reallege and incorporate by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

61. An actual and substantial controversy exists between Plaintiffs and the Corps over the Corps' failure to comply with the CWA in determining that Plaintiffs' Property contains a jurisdictional waterbody.

62. Plaintiffs contend that their Property contains no jurisdictional waterbodies, whereas the Corps, through its Revised JD, contends that it does. The Corps has had two years to develop information supporting its allegations of jurisdiction, there is a complete administrative record on which the Revised JD was made, and any further administrative proceedings before the Corps would be futile. Therefore, no further factual development is necessary to resolve the legal issues raised by this action.

63. The Corps' Revised JD is a final agency action subject to judicial review under the APA. *See* 5 U.S.C. §702; 33 C.F.R. §§320.1(a)(6) & 331.21.

64. The case is currently justiciable because the Corps has unlawfully asserted jurisdiction over Plaintiffs' Property.

65. Plaintiffs are currently and continuously injured by the Corps' unlawful exercise of jurisdiction because the existence of the Revised JD decreases the value of their Property and prevents them from exercising their livelihood on their Property.

66.     Plaintiffs are currently and continuously injured by the Corps' unlawful exercise of jurisdiction because they cannot conduct peat mining on their property without fear of an enforcement action being brought against them.  The Revised JD increases the likelihood that Plaintiffs will be subject to an enforcement action should they initiate these activities.  Further, the Revised JD increases Plaintiffs' potential civil and criminal liability should they initiate these activities.

67.     Plaintiffs are currently and continuously injured by the Revised JD because it obligates them to go through the time consuming and expensive process of obtaining a Section 404 permit from the Corps before conducting their proposed activities, and the Corps has informed Plaintiffs in its correspondence of the substantial and expensive area wide research projects that it would require of Plaintiffs' in an effort to obtain a Section 404 permit from the Corps.

68.     Plaintiffs are, therefore, entitled to a declaratory judgment declaring that the Revised JD is invalid and that the Corps does not have jurisdiction over the Property pursuant to the CWA.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1.      A declaration that Plaintiffs' Property is not subject to the CWA;

2.      A declaration that Defendant's Revised Approved Jurisdictional Determination is invalid;

3.      An injunction enjoining Defendant from exercising jurisdiction over Plaintiffs' Property;

4.   An award of attorney's fees, to the extent allowed by law pursuant to 28 U.S.C. §2412(d)(1)(A), together with expenses, and costs; and,

5.   For any such other and further relief that the Court deems proper under the circumstances of this case.

DATED: January 11, 2013.

                                      Respectfully submitted,

                                      GRAY, PLANT, MOOTY,
                                        MOOTY & BENNETT, P.A.

                                    By s/Gregory Merz
                                        Gregory R. Merz (185942)
                                        Nancy Quattlebaum Burke (161044)
                                        500 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, MN 55402
                                        (612) 340-3257 / 3029

                                    Attorneys for Plaintiffs

GP:3318154 v3